# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| HAZELDEN BETTY FORD FOUNDATION and ELIZABETH B. FORD CHARITABLE TRUST, | No. 20-409 (JRT/TNL) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| MY WAY BETTY FORD KLINIK GmBH, | |
| Defendant. | |

Laura L. Myers and Nirmani Chethana Perera, **FREDRIKSON & BYRON PA**, 200 South 6th Street, Suite 4000, Minneapolis, MN 55402.

Alan M. Anderson, Matthew R. Palen, and L. Reagan Florence, **ALAN ANDERSON LAW FIRM LLC**, 11100 Wayzata Boulevard, Suite 545 Minneapolis, MN 55305.

Plaintiffs Hazelden Betty Ford Foundation ("Hazelden"), a Minnesota nonprofit corporation that provides alcohol and drug addiction treatment, and the Elizabeth B. Ford Charitable Trust (the "Betty Ford Trust"), the successor-in-interest to Elizabeth B. Ford's copyrights and trademarks, brought an action against Defendant My Way Betty Ford Klinik GmbH ("MWBF Klinik") for statutory and common law trademark infringement, unfair competition, false advertising, cybersquatting, and infringement of the right to publicity under California law.  MWBF Klinik operates a private clinic and rehabilitation

facility in Bad Brückenau, Germany.  MWBF Klinik filed a Motion to Dismiss pursuant to

Rule of Civil Procedure 12(b)(2), arguing that the Court lacks personal jurisdiction.

Because Plaintiffs have made a prima facie showing that Defendant has minimum

contacts with the forum, pursuant to Rule 4(k)(2), the underlying action arises out of these

contacts, and it is reasonable for MWBF Klinik to defend itself in Minnesota, the Court will

deny Defendant's Motion to Dismiss.

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A.  THE BETTY FORD MARKS

Former First Lady Elizabeth B. Ford ("Mrs. Ford") was a public advocate for

addiction awareness and treatment during her lifetime.  (Am. Compl. ¶ 10, Feb. 5, 2020,

Docket No. 6.) Although she died in 2011, her name continues to be associated with

addiction treatment and recovery worldwide.  (*Id.* ¶¶ 19–20.)  The Betty Ford Trust holds

the rights to all service marks and trademarks that include the Betty Ford name (the

"Betty Ford Marks" or "the Marks"), and is the successor-in-interest to all rights and title

that Mrs. Ford owned or acquired during her life.  (*Id.* ¶ 2.)  The Betty Ford Trust is based

in California and governed by the laws of the State of California.  (*Id.* ¶ 4.)  In 2019, the

Betty Ford Trust registered the name, voice, signature, photograph, and likeness of Mrs.

Ford, pursuant to California Civil Code § 3344.1.  (*Id.* ¶¶ 14–15.)  From 1992 to 2013, the

Betty Ford Center ("BFC"), a former California nonprofit public benefit corporation, held

a limited license from the Betty Ford Trust permitting BFC to use the Betty Ford name and Marks in connection with its substance abuse treatment services. (*Id*. ¶ 11.)

In 2013, BFC merged with Hazelden, a Minnesota nonprofit corporation with a principal place of business in Center City, Minnesota. (*Id*. ¶¶ 1, 12.) Hazelden operates alcohol and drug treatment programs in Minnesota, California, Oregon, Illinois, Florida, Washington, and New York. (*Id*. ¶ 16.) Hazelden has provided treatment for nearly forty years and has a strong association with the Betty Ford Marks. (*Id*. ¶ 18.) While the Betty Ford Trust continues to own the "Betty Ford Center" trademark for uses related to education, treatment, and other drug and alcohol treatment services, Hazelden has the exclusive right to use the Betty Ford Name and Marks. (*Id*. ¶¶ 13–14.)

### B.  DISCUSSIONS BETWEEN THE PARTIES

MWBF Klinik is a German entity that operates a drug and alcohol addiction clinic and rehabilitation facility in Bad Brückenau, Germany. (*Id.* ¶ 5.) In 2012, MWBF Klinik contacted BFC to explore the possibility of a cooperative relationship. (*Id*. ¶ 21; Decl. of Laura L. Myers ("Myers Decl.") ¶ 2, Ex. A ("Outreach") at 4, Aug. 24, 2020, Docket No. 25-1.) MWBF Klinik stated that a separate German entity owned the trademark for the name "My Way Betty Ford Klinik" and that the trademark owner had terminated its license with MWBF Klinik. (Am. Compl. ¶ 22–23.) MWBF Klinik disclosed that it was engaged in litigation with the trademark owner regarding rights to the name and that cooperation with BFC would be a "preferred option" to secure its rights to use the Betty Ford Marks

and concept. (Outreach at 2.) MWBF Klinik posited that a cooperative arrangement could empower MWBF Klinik to "stop[] infringements and violations of the name Betty Ford" in Germany. (*Id.*)

On January 5, 2013, MWBF Klinik representatives Sigurd Gawinski and Sven Marquardt[1] contacted BFC's then-President and CEO John Schwarzlose, proposing that Gawinski and Marquardt visit BFC to discuss various aspects of a potential cooperative relationship, including exchanging medical concepts and experts, joint research, business objectives, protection of intellectual property, and licensing. (Myers Decl. ¶ 3, Ex. B at 10–11, Aug. 24, 2020, Docket No. 25-1.) Schwarzlose responded that BFC could discuss a consulting arrangement but cautioned that it could not license the Betty Ford name. (*Id.* at 10.) Gawinski and Marquardt expressed concern that the German licensor could open a new clinic in Germany with the same name, proposing instead that MWBF Klinik could potentially "change[] its name after a reasonable transition period and at the same time [BFC] provides for appropriate legal protection of the name Betty Ford Klinik in Germany (or even Europe)." (*Id.* at 9.)

In 2013, Marquardt and Gawinski traveled to California on behalf of MWBF Klinik to discuss their ideas and deliver a letter of intent for the proposed partnership. (Am. Compl. ¶ 24; Myers Decl. ¶ 4, Ex. C ("Post-Visit Corresp.") at 19, Aug. 24, 2020, Docket

---

[1] Gawinski is referred to as both CEO of Tertia Med GmbH, MWBK Klinik's management company, (Myers Decl. ¶ 3, Ex. B ("Pre-Visit Corresp.") at 11, Aug. 24, 2020, Docket No. 25-1), and as Managing Director of MWBF Klinik, (Decl. of Sven Marquardt ("Marquardt Decl.") ¶ 12, Aug. 3, 2020, Docket No. 20). Marquardt is referred to as COO of Tertia Med GmbH, (Pre-Visit Corresp. at 11), and as Administrative Director of MWBF Klinik, (Marquardt Decl. ¶ 3).

No. 25-1.)  After the 2013 visit, Schwarzlose communicated to MWBF Klinik that BFC was not interested in pursuing a business arrangement because MWBF Klinik was too small an operation to cover BFC's consultation costs.  (Am. Compl. ¶ 27; Post-Visit Corresp. at 18.)  In response, Marquardt and Gawinski urged Schwarzlose to reconsider, arguing that MWBF Klinik could "easily offer a license fee of [$0.325 million] per year if we receive full license rights for the medical concept and enforceable name/trademark rights," and touting their reputation among healthcare facilities in Europe and the Middle East.  (Post-Visit Corresp. at 16.)  MWBF Klinik again acknowledged the value of the Betty Ford Brand and the need to protect it from other German infringers.  (*Id.*)

In the fall of 2013, BFC and Hazelden commenced the merger of the two entities. In September and again in November of that year, MWBF Klinik urged BFC to resume talks about licensing the Betty Ford Marks and establishing protections for BFC's rights in Europe.  (Am. Compl. ¶ 31; Post-Visit Corresp. at 14–15.)  MWBF Klinik cautioned that the Betty Ford name may be damaged in Germany and in the European Union and asserted it would have to continue its operations under a new name, unrelated to Betty Ford, if the parties could not reach an agreement.  (Am. Compl. ¶ 31; Myers Dec. ¶ 5, Ex. D ("Transition") at 23, Aug. 24, 2020, Docket No. 25-1.)  BFC declined to resume discussions with MWBF Klinik at that time.  (Am. Compl*.* ¶ 32; Transition at 22.)

After the BFC-Hazelden merger was complete, MWBF Klinik contacted Hazelden, stating that it had terminated its license to the German trademark "My Way Betty Ford

Klinik," effective June 30, 2015 and was aware that the German trademark owner had never received permission to use the name.  (Am. Compl. ¶ 33; Myers Decl. ¶ 6, Ex. E ("Termination") at 25, Aug. 24, 2020, Docket No. 25-1.)  MWBF Klinik represented that it "had reached principal agreement with BFC in all major issues" but that Schwarzlose, who had since retired, "did not pursue this opportunity with high priority."  (Termination at 26.)  MWBF Klinik again indicated that it would adopt a new name and brand if it could not come to agreement with Hazelden.  (Am. Compl. ¶¶ 31, 34; Termination at 26.)  MWBF Klinik also stated its intention to expand capacity at its facility and further develop its brand in the European and Middle Eastern markets.  (Termination at 28.)

On April 8, 2014, Marquardt and Gawinski traveled to Minnesota and met with three Hazelden employees, at Hazelden's invitation.  (Decl. of Sven Marquardt ¶¶ 10–14, Aug. 3, 2020, Docket No. 20.)  Hazelden informed MWBF Klinik in writing at that meeting that it would not provide a license to use the Betty Ford name and reiterated its reliance on the statement that  MWBF Klinik would change its name and cease using references to "Betty Ford" as of July 1, 2015.  (Am. Compl.  ¶¶ 36–37; Myers Decl. ¶ 8, Ex. G at 32, Aug. 24, 2020, Docket No. 25-1.)

### C.  MWBF KLINIK'S CONTINUED USE OF THE "BETTY FORD" NAME

After July 2015, MWBF Klinik continued to use the "Betty Ford" name.  (Am. Comp. ¶ 38.)  Plaintiffs allege that MWBF Klinik's website was translated into English in late 2015,

at mywaybettyford.com/en.  (*Id.* ¶ 39.)[2]  Though the translated version has since been

removed, Plaintiffs allege that MWBF Klinik made representations on the site suggesting

that it was affiliated with Hazelden, used therapy concepts based on those of "the Betty

Ford Center in California, USA," and included references to MWBF Klinik's 40 years of

experience with "proven Betty Ford therapy."  (*Id.* ¶¶ 40–44.)  Plaintiffs state that they

have received communication from prospective patients, MWBF Klinik patients, and

contacts of MWBF Klinik patients expressing confusion about the relationship between

Hazelden and MWBF Klinik.  (*Id.* ¶¶ 45–48.)

## II.  PROCEDURAL HISTORY

On January 30, 2020, Plaintiffs Betty Ford Trust and Hazelden filed suit against

Defendant MWBF Klinik in the District of Minnesota.  Plaintiffs' Amended Complaint

alleges six counts of trademark infringement under 15 U.S.C. § 1114, unfair competition

under 15 U.S.C. § 1125(a), false advertising under 15 U.S.C. § 1125(b), common law

trademark infringement, cybersquatting in violation of 15 U.S.C. § 1125(d), and right of

publicity infringement pursuant to California Civil Code § 3344.1.  (Am. Compl. ¶¶ 52–

134.)

---

[2] Plaintiffs initiated a Uniform Domain Name Dispute Resolution Policy ("UDRP") Proceeding with the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center in September 2019.  (Myers Decl. ¶ 9, Ex. H at 2, Aug. 24, 2020, Docket No. 25-1.)  The proceeding focused on MWBF Klinik's use of the domain name mywaybettyford.com.  (*Id.*)  WIPO denied Plaintiffs' complaint, "not on the merits, but on the narrow grounds that it is a complex business dispute that exceeds the relatively limited 'cybersquatting' scope of the UDRP, and would be more appropriately addressed by a court of competent jurisdiction."  (Decl. of Alan M. Anderson ¶ 2, Ex. A at 7, Aug. 3, 2020, Docket No. 19-1.)

On August 3, 2020, MWBF Klinik filed a Motion to Dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2).  (Mot. Dismiss, Aug. 3, 2020, Docket No. 15.)

## DISCUSSION

### I.  STANDARD OF REVIEW

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction."  *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir. 2003).  "As long as there is 'some evidence upon which a prima facie showing of jurisdiction may be found to exist,' the Rule 12(b)(2) motion will be denied."  *Pope v. Elabo GmbH,* 588 F. Supp. 2d 1008, 1014 (D. Minn. 2008) (quoting *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211, 1215 (8th Cir. 1977)). The party seeking to establish personal jurisdiction bears the burden of proof, and "the burden does not shift to the party challenging jurisdiction."  *Epps,* 327 F.3d at 647.  For purposes of a prima facie showing, the Court must view the evidence in the light most favorable to the non-moving party.  *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F. 3d 588, 592 (8th Cir. 2011).

### A.  PERSONAL JURISDICTION & DUE PROCESS

Generally, the Court may exercise personal jurisdiction over a defendant if doing so (1) is consistent with Minnesota's long-arm statute and (2) comports with the Due Process Clause of the Fourteenth Amendment.  *See Whaley v. Esebag*, 946 F.3d 447, 451

(8th Cir. 2020).  Because Minnesota's long-arm statue extends as far as the Due Process Clause allows, "the Court need only consider whether exercising personal jurisdiction over [a defendant] is consistent with due process."  *Pope*, 588 F. Supp. 2d at 1015.

Alternatively, when a claim arises under federal law and the defendant is not subject to the jurisdiction of any state court, "serving a summons establishes personal jurisdiction over a defendant if . . . exercising jurisdiction is consistent with the United States Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole."  *Blue Zones, LLC v. Hartley*, No. 17-5097, 2018 WL 4759835, at *5 (D. Minn. Oct. 2, 2018) (quotation omitted).

 "The touchstone of the due-process analysis remains whether the defendant has sufficient 'minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Although personal jurisdiction can be general or specific, this action concerns whether the Court can assert specific jurisdiction over MWBF Klinik.  The Court must therefore assess whether "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Keeping these considerations in mind, the Eighth Circuit employs a five-factor personal jurisdiction test, assessing:

> (1) the nature and quality of the contacts with the forum state;
> (2) the quantity of the contacts with the forum state;
> (3) the relationship of the cause of action to the contacts;
> (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

*See Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 477 (8th Cir. 2012) (citation omitted).

The five-factor test essentially comes down to three elements: (1) whether the quality and quantity of the defendant's contacts with the forum state establish minimum contacts; (2) whether the litigation arises out of those contacts; and finally, if the first two are met, (3) whether it is reasonable, considering the interest of the forum state and convenience to the parties, to force an out-of-state litigant to defend itself in the forum state. *Ahlgren v. Muller*, 438 F. Supp. 3d 981, 987 (D. Minn. 2020).

## II.  ANALYSIS

### A.  QUANTITY AND QUALITY OF CONTACTS

#### 1.  Contacts with Minnesota

As a threshold matter, the Court is not convinced that Plaintiffs have alleged enough contacts exclusively between MWBF Klinik and Minnesota to satisfy the "minimum contacts" requirement. *Int'l Shoe*, 326 U.S. at 316.  Most of the email communications, negotiations, and one of MWBF's key visits were with BFC in California

-10-

prior to the merger with Hazelden.  Contacts with Minnesota, however, only include one visit by MWBF representatives to Hazelden, one letter, and an email exchange. Accordingly, the Court finds that MWBF Klinik's contacts with Minnesota are an inadequate basis for specific personal jurisdiction.

### 2.  Contacts with the Nation as a Whole

Plaintiffs alternatively argue that the Court has jurisdiction over MWBF Klinik pursuant to Rule 4(k)(2) of the Rules of Civil Procedure.  Rule 4(k)(2) authorizes the Court to aggregate a foreign defendant's nationwide contacts if a defendant purposefully directed his action at the United States.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006).  Rule 4(k)(2) has three requirements: "(1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process."  *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018).[3]

Plaintiffs allege multiple violations of the Lanham Act, satisfying the first requirement.  As to the second prong, the Court has established that MWBF Klinik is not subject to jurisdiction in Minnesota and MWBF Klinik has not conceded to the alternative jurisdiction of courts in California or any other state.  Where a defendant "contends that

---

[3] *See, e.g.*, *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017*World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 721–22 (5th Cir. 1996).

he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)."  *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (*quoting ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).[4]  The Court will therefore consider MWBF Klinik's contacts with "the United States as a whole instead of a particular state forum."  *Caddy*, 453 F.3d at 1158.

Plaintiffs assert that MWBF Klinik's actions, taken together, establish sufficient minimum contacts with the United States.  The Court agrees.  MWBF Klinik's visits to California and Minnesota for the express purpose of pursuing a licensing arrangement with Plaintiffs "are evidence of [MWBF Klinik's] contacts with [the forum] and indicates [MWBF Klinik's] purposeful availment of the benefits and protections of [the forum]."  *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1434 (8th Cir. 1995).

But these visits are only two links in MWBF Klinik's multi-year chain of contacts including calls, emails, letters, and negotiations focused on establishing a business relationship with Plaintiffs and securing MWBF Klinik's rights to the Betty Ford Marks.[5]

---

[4] *See, e.g., Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) ("[S]o long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction."); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005) (citing *ISI Int'l* and *Adams*).

[5] MWBF Klinik also argues that there are insufficient minimum contacts because it is not incorporated in Minnesota or any other state, does not hold property, telephone numbers, offices, or treatment facilities, bank accounts, or have employees in Minnesota or any other state.  However, these kinds of "continuous and systematic" contacts are only required for general jurisdiction; specific jurisdiction is "confined to adjudication of issues deriving from, or

Indeed, even after Plaintiffs expressed that they would not grant permission to use the Marks and were not interested in establishing a partnership, MWBF Klinik persisted in its efforts to forge an association with Plaintiffs.  These contacts collectively weigh in favor of asserting personal jurisdiction over MWBF Klinik.  *Whaley*, 946 F.3d at 452–53.

Further, because Plaintiffs' trademark infringement claims sound in intentional tort, the Court also considers the *Calder* "effects test."  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991).  Under the *Calder* test, a defendant's allegedly tortious conduct may create sufficient minimum contacts with the forum state if the plaintiff can make a prima facia showing "that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum]."  *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010).

Plaintiffs allege that MWBF Klinik traveled to the United States, sought out and negotiated business relationships with a company in the United States, and attempted to leverage its association with the United States to expand its business and protect its own brand.  *Whaley*, 946 F.3d at 452–53.  Although the business relationship that MWBF Klinik pursued never came to fruition, their contacts were neither random, fortuitous, nor

---

connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted).

attenuated, but were deliberate engagements with the forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).

MWBF Klinik admitted in multiple communications that the Betty Ford Marks and brand were valuable and in need of protection. Plaintiffs independently advised MWBF Klinik of the proprietary nature of the Marks and that the Betty Ford name could not be independently licensed. A key feature of MWBF Klinik's overtures was its offer to serve as a bulwark against infringement of the Betty Ford Marks in Europe. When these efforts failed, MWBF Klinik continued to use the Marks, despite statements to Plaintiffs that they would cease. Accordingly, the Court finds that MWBF Klinik was on notice that continued unauthorized use of the Marks would cause harm to Plaintiffs, and that Plaintiffs have plausibly alleged actual harm.

In sum, the Court finds that contacts with Minnesota and California—including MWBF Klinik's visits, pattern of communication, business negotiations with Hazelden and BFC, and efforts to secure access to the Marks and associated legal protections—are of sufficient quality and quantity to establish minimum contacts with the forum.


### B. RELATIONSHIP BETWEEN CONTACTS AND CAUSE OF ACTION

With respect to whether the litigation arises out of these contacts, MWBF Klinik argues that the meetings in California and Minnesota did not cause the injuries alleged by Plaintiffs and that MWBF Klinik employees did not commit any unlawful acts during

the meetings.  MWBF Klinik misunderstands the standard.  Plaintiffs are not required to prove that a specific injury or unlawful act was caused during one of many contacts; rather, "specific jurisdiction is warranted when the defendant purposely directs its activities at the forum state and the litigation result[s] from injuries . . . relating to [defendant's] activities [in the forum.]"  *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906 (8th Cir. 2014) (quoting *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 912–13 (8th Cir. 2012). Further, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Walden*, 571 U.S. at 290.

Because MWBF Klinik's only alleged contacts with the forum are related to their pursuit of the Betty Ford Marks and the cause of action arises out of their continued unauthorized use of the Marks, the Court finds that the second factor is satisfied.  It is also relevant that one of MWBF Klinik's stated goals was to avail itself of U.S. trademark protections and have a legal basis for challenging other infringements on the Betty Ford Marks in Germany and the European Union.  The Court finds that after pursuing a partnership with a U.S.-based entity, seeking to avail itself of the legal protections associated with that entity, and allegedly infringing an agreement to cease use of that entity's trademarks, MWBF Klinik should have reasonably anticipated being haled into court in the United States.  *See Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

C. **CONSTITUTIONAL REASONABLENESS**

The final factors are the interest of the forum in providing a forum for its residents and the convenience of the parties. *Dairy Farmers*, 702 F.3d at 477. While these two "reasonableness" factors are secondary to the other considerations in a jurisdictional analysis, they are heightened by the fact that MWBF Klinik is not located in the United States. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987).[6]

When dealing with a defendant outside of the United States, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114. However, when minimum contacts have been established, the interests of the plaintiff and the forum in the exercise of jurisdiction can overcome the burdens placed on the defendant. *Id.*

The Court recognizes that MWBF Klinik is a small organization and the challenges associated with litigating in a foreign country are significant. Those burdens are not to be taken lightly. However, despite MWBF Klinik's argument that these challenges are magnified by the pandemic, the Court finds the opposite to be true: the Court has

---

[6] The Court also considers "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction." *Asahi*, 480 U.S. at 115 (emphasis in original omitted). Though MWBF Klinik claims to have registered a trademark for the Betty Ford name in Germany and the E.U., it has presented no more than conclusory suggestions as to why or how the procedural or substantive policies in Germany or the E.U. would be affected by the Court's assertion of jurisdiction in this matter. Accordingly, the Court does not find this factor dispositive in this case.

embraced the option of remote appearances at proceedings, discovery is largely digital, and most law firms have technological support for remote depositions and litigation preparation, so the burdens of participating in a foreign proceeding, although significant, are not nearly as great as they once were.

Further, the United States has an interest in adjudicating disputes related to the trademarks, patents, and business interests of U.S.-based corporations. *See, e.g. Steele v. Bulova Watch Co.*, 344 U.S. 280, 283–84 (1952). This is particularly true when a defendant argues—as MWBF Klinik has here—that the plaintiff would be barred from seeking relief in the Courts where defendant is domiciled, thereby suggesting that there is no other forum in which Plaintiffs can adjudicate their grievances. The interstate judicial system's interest in obtaining efficient resolution of controversies and the states' shared interest in furthering fundamental substantive social polices accordingly tip the scales in favor of providing a forum for this dispute. *See Burger King*, 471 U.S. at 477.

The Court accordingly finds that exercise of personal jurisdiction in this matter is reasonable and does not offend "traditional notions of fair play and substantial justice." *Myers*, 689 F.3d at 913.

## CONCLUSION

In conclusion, the Court finds that Plaintiffs have made a prima facie showing of personal jurisdiction over MWBF Klinik. Plaintiffs have sufficiently pleaded, pursuant to Rule 4(k)(2), that MWBF Klinik has sufficient minimum contacts with the nation as a

whole, a relationship exists between the contacts and the litigation, and that litigation in this forum is constitutionally reasonable.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Docket No. 15] is **DENIED**.


DATED:  December 1, 2020                        _____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                                         Chief Judge
                                                         United States District Court