**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

HAZELDEN BETTY FORD FOUNDATION
and ELIZABETH B. FORD CHARITABLE
TRUST,

                      Plaintiffs,

v.

MY WAY BETTY FORD KLINIK, GmbH

                      Defendant.

Civil No. 20-409 (JRT/TNL)


**MEMORANDUM**
**OPINION AND ORDER**

---

    Laura L. Myers and Nirmani Chethana Perera, **FREDRIKSON & BYRON PA**,
200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for plaintiffs.

    Alan M. Anderson and L. Reagan Florence, **ALAN ANDERSON LAW FIRM LLC**,
11100 Wayzata Boulevard, Suite 545 Minneapolis, MN 55305, for
defendant.


    Plaintiffs Hazelden Betty Ford Foundation ("Hazelden") and the Elizabeth B. Ford

Charitable Trust (the "Betty Ford Trust") brought an action against Defendant My Way

Betty Ford Klinik GmbH ("MWBF Klinik") for statutory and common law trademark

infringement, unfair competition, false advertising, cybersquatting, and infringement of

the right to publicity under California law.  On December 1, 2020, the Court issued an

order denying MWBF Klinik's motion to dismiss for lack of personal jurisdiction.  MWBF

Klinik then filed a Motion for Certification for Interlocutory Appeal pursuant to 28 U.S.C.

§ 1292(b).  Because MWBF Klinik has not demonstrated that the order raises a controlling

question of law warranting immediate appeal, the Court will deny the Motion for

Certification.

MWBF Klinik also filed a Motion for Judgment on the Pleadings pursuant to Federal

Rules of Civil Procedure 12(c), or in the alternative, for Summary Judgment.  Because the

Court finds that Plaintiffs plausibly plead claims for which relief may be granted, the Court

will deny MWBF Klinik's Motion for Judgment on the Pleadings.  Additionally, because

discovery has not yet commenced and Plaintiffs have not yet had the opportunity to

develop the factual record to support their claims, the Court finds that summary

judgment would be premature at this time and will deny MWBF Klinik's alternative

Motion for Summary Judgment.

## BACKGROUND

### I.    FACTUAL BACKGROUND

The facts of this matter were documented in detail in the Court's prior order.  *See*

*Hazelden Betty Ford Found. v. My Way Betty Ford Klinik GmbH*, 504 F. Supp. 3d 966, 970–

73 (D. Minn. 2020).  As relevant here, Plaintiffs operate drug and alcohol treatment

programs across the United States and hold exclusive rights to the use and licensing of

the Betty Ford Marks, which are associated with Plaintiffs' distinct treatment model.

(Am. Compl. ¶¶ 1–2, 10–16, 18, Feb. 5, 2020, Docket No. 6.)  MWBF Klinik is a German

entity that operates a drug and alcohol treatment facility in Bad Brückenau, Germany.  (*Id.*

¶ 5.)   In 2012, MWBF Klinik contacted the Betty Ford Center ("BFC") to propose a cooperative business relationship.  (*Id.* ¶ 21.)

Over the course of the next two years, MWBF Klinik representatives visited BFC in California and engaged in email and phone communications with Plaintiffs regarding MWBF Klinik's interest in forming a business relationship.  (*Id*. ¶¶ 22–34.)  MWBF Klinik claimed that a cooperative business arrangement would provide legal cover for MWBF Klinik's continued use of the Betty Ford marks in Germany and would advance Plaintiffs' intellectual property and business interests in Europe and the Middle East.  (*Id.* ¶¶ 24, 29, 31; Myers Decl. ¶ 4, Ex. C at 16, Aug. 24, 2020, Docket No. 25-1.)  Throughout these discussions, MWBF Klinik represented that it would adopt another name and cease its use of "Betty Ford" if the parties could not come to an agreement.  (Am. Compl. ¶ 31.)

In April of 2014, MWBF Klinik representatives traveled to Minnesota to meet with Hazelden; Hazelden informed MWBF Klinik in writing at that meeting that it would not provide a license to use the Betty Ford name and that it relied on MWBF Klinik's prior assurances that it would change its name and cease using references to "Betty Ford" by July 1, 2015.  (*Id.* ¶¶ 35–37.)

MWBF Klinik has continued to use the "Betty Ford" name, including on its website.  (*Id.* ¶¶ 38–39.)  As a result, Plaintiffs allege that MWBF Klinik has misrepresented its affiliation with Plaintiffs in promoting its services.  (*Id.* ¶¶ 40–44.)  Plaintiffs also aver that they have received communications at their offices in the United States from prospective

patients, MWBF Klinik patients, and the contacts of MWBF Klinik patients expressing confusion about the relationship between the entities, and have documented other instances of actual confusion among consumers in the United States and abroad.  (*Id.* ¶¶ 45–48; *see also* 2nd Decl. Laura L. Meyers ¶¶ 4–6, 9–13, Feb. 2, 2021, Docket No. 64.)

## II.    PROCEDURAL BACKGROUND

On January 30, 2020, Plaintiffs filed suit against Defendant MWBF Klinik in the District of Minnesota.  (Compl., Jan. 30, 2020, Docket No 1.)  Plaintiffs filed an Amended Complaint on February 5, 2020, alleging six counts for trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), false advertising under 15 U.S.C. § 1125(b), common law trademark infringement, cybersquatting in violation of 15 U.S.C. § 1125(d), and right of publicity infringement pursuant to California Civil Code § 3344.1.  (Am. Compl. ¶¶ 52-134.)

On August 3, 2020, MWBF Klinik filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  (Mot. Dismiss, Aug. 3, 2020, Docket No. 15.)  The Court denied the motion, finding that personal jurisdiction existed pursuant to Rule 4(k)(2).  *Hazelden*, 504 F. Supp. 3d at 978.  MWBF Klinik then filed a Motion to Certify Interlocutory Appeal.  (Mot. Certify Interlocutory Appeal Dec. 28, 2020, Docket No 42.)

MWBF Klinik subsequently filed a Motion for Judgment on the Pleadings, or, in the alternative, for Summary Judgment.  (Mot. J. Pleadings, Jan. 12, 2021, Docket No. 57.) Plaintiffs oppose both Motions.

**DISCUSSION**

**I.      MOTION TO CERTIFY INTERLOCUTORY APPEAL**

MWBF Klinik asks the Court to certify two questions for interlocutory appeal: which party bears the burden of proving the non-existence of jurisdiction in any other forum in the United States under Federal Rule of Civil Procedure 4(k)(2); and whether personal jurisdiction over MWBF Klinik as a foreign defendant is proper under Rule 4(k)(2).  MWBF Klinik argues that the court's application of Rule 4(k)(2) is a question of law that has not been settled by the Eighth Circuit and asks the court to stay proceedings pending an interlocutory appeal.

**A.      Standard of Review**

Section 1292(b) creates a narrow exception to the final judgment rule and allows district courts to certify orders for interlocutory appeal if certain criteria are satisfied and the district court determines that certification is appropriate.  28 U.S.C. § 1292(b); *see also White v. Nix,* 43 F.3d 374, 377 (8th Cir. 1994). To certify a question for interlocutory appeal, the district court must determine that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an

immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"  28 U.S.C. § 1292(b).

Although district courts have discretion to certify an order for an immediate interlocutory appeal, it has "long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants."  *White*, 43 F.3d at 376 (quotation omitted).  Further, the statute's legislative history indicates that it was to be used only in extraordinary cases where a decision on interlocutory appeal might avoid protracted and expensive litigation.  *Id.*  For these reasons, a motion for certification of interlocutory appeal "must be granted sparingly, and the movant bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted."  *Id.*

### B.    Analysis

A question of law is "controlling" if "reversal of the district court's order would terminate the action," or even "if its resolution is quite likely to affect the further course of the litigation."  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Donaldson Co., Inc.,* No. 10–4948, 2015 WL 4898662, at *2 (D. Minn. Aug. 17, 2015).  Here, MWBF Klinik merely challenges the application of settled law—the jurisdictional scope of Rule 4(k)(2)—to a specific set of facts—the quality, quantity, and timeline of MWBF Klinik's contacts with the United States.  The application of law to facts, however, does not present the type of purely legal question that is appropriate for certification under § 1292.  *See Great Lakes*

*Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC*, No. 09-3037, 2013 WL 4028144, at

*4 (D. Minn. Aug. 7, 2013); *see also Nat'l Union*, 2015 WL 4898662, at *3–4.

Second, MWBF Klinik's argument regarding whether substantial grounds for

difference of opinion exist focuses almost entirely on potential differences of opinion

regarding the Court's application of law to the facts of the case, not on the Court's legal

interpretation of Rule 4(k)(2).[1]  MWBF Klinik has therefore not demonstrated that there

are a sufficient number of conflicting and contradictory opinions on a controlling question

of law.[2]

Finally, MWBF Klinik's argument that certification would materially advance the

ultimate termination of the litigation is premised on an assumption that the Eighth Circuit

would find jurisdiction improper and dismiss the action.  However, given that MWBF Klinik

has not identified any substantial ground for difference of opinion as to the Court's legal

interpretation of Rule 4(k)(2), there is at least an equal or greater possibility that

certification would unduly delay termination of the litigation by stalling the proceedings.

---

[1] The Court also notes that it applied Rule 4(k)(2) similarly as other judges in this district and in other jurisdictions.  *See e.g.*, *Blue Zones, LLC v. Hartley*, No. 17-5097, 2018 WL 4759835, at *5 (D. Minn. Oct. 2, 2018); *see also Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1072 (9th Cir. 2017); *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461–62 (9th Cir. 2007); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158–59 (9th Cir. 2006).

[2] Although MWBF Klinik has identified a circuit split with regard to the question of which party bears the burden of establishing jurisdiction in a Rule 4(k)(2) analysis, which is a legal question, it makes no argument regarding whether the question is controlling; that is, whether resolving it would entail terminating the action or would likely affect the further course of the litigation.  One factor alone does not support granting interlocutory appeal.

*See White*, 43 F.3d at 378 ("certification is proper only when it will materially advance the ultimate termination of the litigation.").

In sum, MWBF Klinik does not satisfy the requisite criteria with respect to its proposed questions for appeal.  Although MWBF Klinik may disagree with the Court's conclusion regarding the sufficiency of MWBF Klinik's contacts with the United States pursuant to Rule 4(k)(2), interlocutory appeal does not exist to "provide review of difficult rulings in hard cases."  *Union Cnty. v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008). The Court will therefore deny MWBF Klinik's Motion to Certify Interlocutory Appeal and its request to stay the action.

## II.     MOTION FOR JUDGMENT ON THE PLEADINGS

### A.     Standard of Review

A motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6).  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).  The Court considers all facts alleged in the complaint as true to determine if the complaint states a claim for "relief that is plausible on its face." *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in their favor.  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a

factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or mere "labels

and conclusions or a formulaic recitation of the elements of a cause of action," *Iqbal*, 556

U.S. at 678 (quotation omitted).   Instead, "[a] claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Id.*

### B.      Jurisdiction vs. Merits

MWBF Klinik first urges the Court to declare sua sponte that it lacks subject matter

jurisdiction over Plaintiffs' Lanham Act claims because MWBF Klinik is not a United States

citizen and purports to operate outside the stream of United States commerce.  However,

the Supreme Court's decision in *Arbaugh v. Y.&H. Corp.*, established a clear rule for

distinguishing between merits and jurisdictional questions:

> If the Legislature clearly states that a threshold limitation on
> a statute's scope shall count as jurisdictional, then courts and
> litigants will be duly instructed and will not be left to wrestle
> with the issue.  But when Congress does not rank a statutory
> limitation on coverage as jurisdictional, courts should treat
> the restriction as nonjurisdictional in character.

546 U.S. 500, 502 (2006).

Although the Eighth Circuit has not yet addressed *Arbaugh*'s rule in the context of

Lanham Act claims, courts in other jurisdictions have routinely found that extraterritorial

application of the Lanham Act is a merits question, not a jurisdictional one.  *See, e.g., La*

*Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 873 (9th Cir. 2014).  Because

neither 15 U.S.C. §§ 1114 or 1125 limits the federal court's jurisdiction to hear

extraterritorial claims, the Court will decline MWBF Klinik's invitation to interpret

Plaintiffs' Lanham Act claims as a barrier to the Court's jurisdiction.[3]   The Court will

proceed instead to the question of whether Plaintiffs have stated a viable claim for relief.

### C.      Lanham Act Claims

The Lanham Act creates a civil cause of action against a party who uses in

commerce any "colorable imitation of a registered mark," 15 U.S.C. § 1114(1)(a), or "any

word, term, name" or "any false designation of origin . . . or misleading representation of

fact" that is likely to cause confusion or mistake or "deceive as to the affiliation,

connection, or association of such person with another person[.]"  15 U.S.C. § 1125(a)(1).

The Lanham Act vests federal courts with original jurisdiction over claims arising under

the Act.  15 U.S.C. § 1121(a).  The Lanham Act's broad jurisdictional grant extends to

extraterritorial infringements, *Steele v. Bulova Watch Co.*, 344 U.S. 281, 286 (1952), and

the circuits have adopted various tests to determine the scope of the Lanham Act as

applied to foreign defendants.[4]

---

[3] MWBF Klinik cites *Paul E. Hawkinson Co. v. Anderson Tire & Treads, Inc.*, which addressed extraterritorial application of the Lanham Act as a jurisdictional issue.  No. 11-1168, 2011 WL 4590413, at *2 (D. Minn. Sept. 30, 2011).  However, the court in that case found that plaintiff had failed to identify any effect on U.S. commerce stemming from the alleged Lanham Act violations, and had therefore failed to state a claim.  *Id.* at *3.  The court also did not address the impact of *Arbaugh* on the Lanham Act claims.

[4] *See, e.g.*, *Reebok Int'l., Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 554 (9th Cir. 1992); *McBee v. Delica Co.*, 417 F.3d 107, 111 (1st Cir. 2005).  The Eighth Circuit has not adopted any particular test for assessing the extraterritorial application of the Lanham Act.

One of the most cited tests, and the one that the parties have focused on here, is the Second Circuit's *Vanity Fair* test, in which the Court weighs three factors to determine a foreign defendant's liability for alleged infringements: (1) whether the defendant's conduct has a substantial effect on United States. commerce; (2) whether the defendant is a U.S. citizen; and (3) whether there is conflict with other trademark rights under foreign law. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642 (2d Cir. 1956).  The *Vanity Fair* test is a balancing test, rather than a test that requires each factor to be proved.  *See, e.g.*, *Nintendo of America, Inc. v. Aeropower Co., Ltd.*, 34 F.3d 246, 251 (4th Cir. 1994).

MWBF Klinik argues that Plaintiffs' claims cannot survive the *Vanity Fair* test and should be dismissed because: (1) MWBF Klinik is not a United States citizen; (2) MWBF Klinik lawfully operates under its German and E.U. trademarks and therefore foreign intellectual property rights are implicated here; and (3) MWBF Klinik's actions have not had a substantial effect on United States commerce.  Because it is undisputed that MWBF Klinik is not a United States citizen, the Court will address only the second and third factors.

### 1.    Foreign Intellectual Property Rights

MWBF Klinik asserts that allowing Plaintiffs' claims to proceed would create a clear conflict with MWBF Klinik's lawful intellectual property rights in Germany and the European Union.  In particular, MWBF Klinik highlights that the Amended Complaint seeks as relief the transfer of MWBF Klinik's <.com> and <.de> domain names, which include

the words "Betty Ford."   Plaintiffs acknowledged at oral arguments that they were

unlikely to prevail on their challenge to MWBF Klinik's German <.de> domain name.

However, the relief Plaintiffs seek extends far beyond the German domain name,

as Plaintiffs allege that MWBF Klinik's infringing activities and misrepresentations of

affiliation with Plaintiffs have caused confusion, impacted Plaintiffs' goodwill, and caused

irreparable harm to Plaintiffs within the United States.   The conduct alleged is not

protected by MWBF Klinik's German or E.U. trademark and the Court finds that the

Amended Complaint includes sufficient factual allegations to suggest that the relief

Plaintiffs seek does not require the Court to interfere with MWBF Klinik's foreign

intellectual property rights.  *See, e.g.*, *Aquavit Pharm. v. U-Bio Med, Inc.*, 19-3351, 2019

WL 8756579, at *2–3 (S.D.N.Y. June 21, 2019) (E.U. trademarks do not establish rights

beyond Europe).

The Second Circuit has cautioned that rigid application of *Vanity Fair* to foreign

defendants, "might mean that we fail to preserve the Lanham Act's goals of protecting

American consumers against confusion, and protecting the holders of American

trademarks against misappropriation of their marks."  *Sterling Drug. Inc. v. Bayer AG*, 14

F.3d 733, 746 (2d Cir. 1994).   The Court agrees.   Insofar as Plaintiffs "seek[] the more

modest goal of limiting foreign uses that reach the United States," *id.*, and where, as here,

relief can ultimately be tailored to avoid serious conflict with foreign intellectual property

rights, MWBF Klinik's foreign trademarks need not create a barrier to Plaintiffs' Lanham Act claims. *Id.*

The Court therefore finds that MWBF Klinik's intellectual property rights in Germany and the E.U. do not weigh against the viability of Plaintiffs' claims.

### 2.      Substantial Effect on United States Commerce

MWBF Klinik argues that Plaintiffs have failed to allege any effect on United States. commerce because Plaintiffs do not assert that they have lost any clients or suffered any concrete injury due to MWBF Klinik's alleged infringement.   MWBF Klinik further argues that confusion related to its internet presence is insufficient to establish an effect on United States commerce.   However, "[i]t is well-settled that a showing of consumer confusion or harm to plaintiff's goodwill in the United States is sufficient to demonstrate a substantial effect on United States commerce."  *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 143 (S.D.N.Y. 2011) (quotation omitted).[5]

Even at this early stage of litigation, Plaintiffs have alleged facts and provided contemporaneous accounts of conversations between Hazelden staff in the United States and consumers expressing confusion between the two entities, as well as online reviews

---

[5] *See also*, *Kroma Makeup EU, Ltd. v. Boldface Licensing + Branding, Inc.*, No. 14-1551, 2015 WL 1708757, at *10 (M.D. Fla. Apr. 15, 2015) ("[W]here the defendant's foreign conduct creates confusion among American consumers, there is little doubt about a substantial effect on U.S. commerce."); *Coca-Cola Co. v. Stewart*, 621 F.2d 287, 290 (8th Cir. 1980) ("A substantial effect on interstate commerce is present when the trademark owner's reputation and good will, built up by use of the mark in interstate commerce, are adversely affected by an intrastate infringement.").

by consumers who used MWBF Klinik's services and appeared to be under the impression that MWBF Klinik was affiliated with Plaintiffs.  The Court finds that these documented instances of confusion are compounded by the fact that Plaintiffs and MWBF Klinik both operate in the addiction treatment space and Plaintiffs have alleged facts suggesting that MWBF Klinik has actively sought to imply a connection and sow confusion about the relationship between the entities while expanding outreach to English speaking audiences, and that there have been instances of actual confusion among consumers in the United States.

Thus, the Court finds that Plaintiffs have pleaded sufficient factual content to give rise to a reasonable inference that MWBF Klinik's alleged conduct has led to consumer confusion and possible harm to plaintiffs' goodwill in the United States.  Plaintiffs have therefore made a showing of a substantial impact on U.S. commerce.

In sum, because two of the *Vanity Fair* factors weigh in Plaintiffs' favor, the Court finds that Plaintiffs have met their burden and will deny MWBF Klinik's Motion for Judgment on the Pleadings.

### III.     ALTERNATIVE MOTION FOR SUMMARY JUDGMENT

MWBF Klinik asserts, in the alternative, that the Court can dispose of this action on summary judgment.  Summary judgment is proper when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment may be appropriately entered

"after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A.      Summary Judgment Analysis

As a threshold matter, MWBF Klinik bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. MWBF Klinik's initial memorandum provides no specific argument as to why summary judgment is appropriate, it merely offers summary judgment as an alternative to a 12(c) motion.  MWBF Klinik ultimately appears to argue that Plaintiffs have not yet proven the elements of their Lanham Act claims, but that the discovery needed to prove those claims constitutes a fishing expedition.

"Although discovery does not have to be completed before a district court can grant summary judgment, summary judgment is proper only after the nonmovant has had adequate time for discovery." *Ray v. Am. Airlines, Inc.*, 609 F.3d 917, 923 (8th Cir. 2010) (quotation omitted).  Discovery has not yet commenced in this action and Plaintiffs have identified various categories of discovery needed to prove their plausible Lanham Act claims, including facts demonstrating confusion between MWBF Klinik and Hazelden Betty Ford Center, MWBF Klinik's representations that it is affiliated with Plaintiffs or that MWBF Klinik is intentionally trading in Plaintiffs' reputation and goodwill, and MWBF

Klinik's treatment of, communications with, and revenue received from patients who are

from or reside in the United States.  As such, the Court finds that summary judgment is

not appropriate and will therefore deny MWBF Klinik's alternative Motion for Summary

Judgment.


**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.  MWBF Klinik's Motion to Certify Interlocutory Appeal [Docket No. 42] is

    **DENIED;**

2.  MWBF Klinik's Motion for Judgment on the Pleadings, or in the Alternative,

    Summary Judgment [Docket No. 57] is **DENIED.**


DATED:  August 20, 2021                            _____
at Minneapolis, Minnesota.                                    JOHN R. TUNHEIM
                                                                       Chief Judge
                                                         United States District Court