## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

HAZELDEN BETTY FORD FOUNDATION and ELIZABETH B. FORD CHARITABLE TRUST,

Plaintiffs,

v.

MY WAY BETTY FORD KLINIK GMBH,

Defendant.

Civil No. 20-409 (JRT/TNL)

**MEMORANDUM OPINION AND ORDER AFFIRMING THE MAGISTRATE JUDGE'S MARCH 29, 2023 ORDER**

Cara S. Donels, **FREDRIKSON & BYRON**, 111 East Grand Avenue, Suite 301, Des Moines, IA 50309; Laura L. Myers, Luke P. DE Leon, Timony M. O'Shea, **FREDRIKSON & BYRON, P.A.,** 60 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for Plaintiffs.

Chad A. Snyder & Michael H. Frasier, **RUBRIC LEGAL LLC**, 111 Third Avenue South, Suite 110, Minneapolis, MN 55401; Jiwon Juliana Yhee, Michael S. Golenson, and Riebana Elisabeth Sachs, **MASUDA, FUNAI, EIFERT & MITCHELL, LTD.**, 203 North LaSalle Street, Suite 2500, Chicago, IL 60601, for Defendant.

Plaintiffs Hazelden Betty Ford Foundation ("Hazelden") and the Elizabeth B. Ford Charitable Trust ("Betty Ford Trust") brought claims against Defendant My Way Betty Ford Klinik GmbH (the "Klinik") for trademark infringement, unfair competition, false advertising, cybersquatting, and infringement of the right of publicity. The Klinik and Plaintiffs both filed motions to compel, which Magistrate Judge Tony N. Leung granted in part and denied in part in a thorough 66-page Memorandum of Opinion and Order on

March 29, 2023.  The Klinik appealed the Magistrate Judge's Order, arguing that it erroneously: (1) orders the Klinik and its German officers, directors, and managing agents to have their depositions taken in Minneapolis, Minnesota; (2) identifies Helmut Heimfarth as a managing agent for purposes of Federal Rule of Civil Procedure 30(b)(6); (3) requires the Klinik to produce confidential patient therapy notes; and (4) requires Plaintiffs to produce documents related to planned/further developments in Germany. Because the Court's review of a magistrate judge's discovery order is very deferential, because the Magistrate Judge did not clearly err, and because the Supreme Court's recent decision in *Abitron Austria GmbH v. Hectronic International, Inc.* does not alter the Magistrate Judge's analysis, the Court will affirm the Magistrate Judge's March 29, 2023 Order.

## BACKGROUND

## I.    FACTS

The facts of this matter were discussed in detail in a previous order by the Court. *See Hazelden Betty Ford Found. v. My Way Betty Ford Klinik GmbH*, 504 F. Supp. 3d 966, 970–73 (D. Minn. 2020).  As is relevant here, Plaintiffs operate drug and alcohol treatment programs across the United States and hold exclusive rights to the use and licensing of the Betty Ford trademarks.  (Am. Compl. ¶¶ 1–2, 10–16, 18, Feb. 5, 2020, Docket No. 6.) The Klinik is a German entity that operates a drug and alcohol treatment facility in Bad Brückenau, Germany.  (*Id.* ¶ 5.)  In 2012, the Klinik contacted the Betty Ford Center ("BFC") to propose a cooperative business relationship.  (*Id.* ¶ 21.)

Over the course of the next two years, the Klinik representatives visited BFC in California and engaged in email and phone communications with Plaintiffs regarding the Klinik's interest in forming a business relationship. (*Id*. ¶¶ 22–34.) The Klinik claimed that a cooperative business arrangement would provide legal cover for the Klinik's continued use of the Betty Ford trademarks in Germany and would advance Plaintiffs' intellectual property and business interests in Europe and the Middle East. (*Id.* ¶¶ 24, 29, 31; *see also* 1st Decl. Laura L. Myers, Ex. C, at 16, Aug. 24, 2020, Docket No. 25-1.) Throughout these discussions, the Klinik represented that it would adopt another name and cease its use of "Betty Ford" if the parties could not come to an agreement. (Am. Compl. ¶ 31.)

In April of 2014, Hazelden informed the Klinik in writing that it would not provide a license to use the Betty Ford name and that it expected the Klinik to change its name based on the Klinik's prior assurances that it would cease to use any reference to "Betty Ford" by July 1, 2015. (*Id.* ¶¶ 35–37.) But the Klinik has continued to use the "Betty Ford" name, including on its website. (*Id.* ¶¶ 38–39.) As a result, Plaintiffs allege that the Klinik has misrepresented its affiliation with Plaintiffs in promoting its services. (*Id.* ¶¶ 40–44.) Plaintiffs also aver that they have evidence of actual confusion in the form of communications from prospective and actual Klinik patients and others expressing confusion about the relationship between the entities. (*Id.* ¶¶ 45–48.)

## II.   PROCEDURAL HISTORY

Plaintiffs initiated this action in January 2020. (Compl., Jan. 30, 2020, Docket No. 1.) The Klinik moved to dismiss for lack of personal jurisdiction, which the Court denied

and declined to certify for interlocutory appeal. (Mem. Op. Order at 1–2, Aug. 20, 2021, Docket No. 79.) The Court also denied the Klinik's motion for judgment on the pleadings or summary judgment. (*Id.* at 2.) The case proceeded into discovery and both sides filed motions to compel, which the Magistrate Judge granted in part and denied in part. (*See generally* Order, Mar. 29, 2023, Docket No. 172.) The Klinik appealed the Magistrate Judge's Order. (*See* Def.'s Obj., Apr. 19, 2023, Docket No. 178.) The Court will summarize the relevant portions of the Magistrate Judge's Order that the Klinik challenges.

**A.    Klinik's Motion to Compel**

The Klinik moved to compel Plaintiffs to produce all documents responsive to its Document Request Nos. 6, 7, and 14, but only challenges the Magistrate Judge's disposition of Document Request No. 6. (Klinik's Mot. Compel, June 3, 2022, Docket No. 100.) Document Request 6 covers documents related to planned or future development in the United States or globally in connection to the Betty Ford trademarks, which Plaintiffs objected to as overbroad, unduly burdensome, and irrelevant. (Klinik's Mem. Supp. Mot. at 7, June 3, 2022, Docket No. 103.) The Magistrate Judge found the request to be relevant but overbroad and, accordingly, narrowed it to only development in Germany. (Order at 8–9.)

**B.    Plaintiffs' Motion to Compel**

Plaintiffs moved to compel the Klinik to provide full responses to Interrogatories Nos. 2, 3, 4, and 5, as well as all documents responsive to Request for Productions Nos. 6, 7, 8, 9, 18, 22, and 23. (*See generally* Pls.' Mot. Compel, June 3, 2022, Docket No. 106.)

Plaintiffs also requested the Klinik produce Sigurd Gawinski, Sven Marquardt, Helmut Heimfarth, and Klaus-Dirk Kampz for deposition, as well as a Rule 30(b)(6) deposition of the Klinik, each to take place in Minneapolis, Minnesota. (*Id.*) The Klinik only challenges the Magistrate Judge's decision on Plaintiffs' Request for Production Nos. 18 and 22 and his findings on the depositions.

### 1.      Request for Production Nos. 18 and 22

The bulk of the parties' argument before the Magistrate Judge pertained to whether the Klinik needed to search its patient records for responsive information. (Order at 16.) The Magistrate Judge acknowledged that the extent to which information is likely to be found in patient files must be balanced against patients' weighty privacy interests. (*Id.* at 17–18.) The Magistrate Judge largely denied the Plaintiffs' request for information in Klinik's patient files. (*Id.* at 18–29.)

Among other things, Plaintiffs requested documents sufficient to identify the number of persons the Klinik has communicated with regarding its addiction treatment services that are either from or who reside in the United States (Request for Production No. 18), and to whom the Klinik provided addiction treatment services (Request for Production No. 22). (Pls.' Mem. Supp. Mot. Compel at 16, June 3, 2022, Docket No. 108.) Though the Klinik argued that the European Union and German General Data Protection Regulation ("GDPR") laws prohibit the production of its patient records, the Magistrate Judge found the production permissible because the data transfer "is necessary for the establishment, exercise, or defense of legal claims." (Order at 31–32.) The Magistrate

Judge determined that the information sought by Request for Production Nos. 18 and 22 went to the heart of the litigation because they address whether there has been a substantial impact on United States commerce. (*Id.* at 34–35.) The requests also sought information in the aggregate, rather than all documents relating to any communications, so the Magistrate Judge found they limited encroachment upon patient records. (*Id.* at 35.)

The Magistrate Judge granted Plaintiffs' Motion to Compel Request for Production Nos. 18 and 22, but only "if that is the only reasonably reliable means sufficient to identify the number of people from or who reside in the United States that the Klinik has communicated with regarding its addiction treatment services or to whom the Klinik has provided addiction treatment services." (*Id.* at 40.) In other words, if the Klinik can identify an alternative means of acquiring reliable information, then the Klinik can propose that to the Plaintiffs and need not produce those patient records. (*Id.*)

### 2. Depositions

Plaintiffs also moved to compel the Klinik to produce certain individuals residing in Germany, including a corporate designee under Rule 30(b)(6), for deposition in Minneapolis, Minnesota. These individuals include Gawinski, the Klinik's current CEO; Marquardt, a general manager/director of the Klinik; Kampz, the Klinik's former CEO and former shareholder; and Heimfarth, the Klinik's current outside auditor/independent accountant and tax advisor as well as a current shareholder. (Order at 46–47.) The Klinik

requests that the depositions occur at the United States Consulate in Frankfurt, Germany. (Def.'s Obj. at 2.)

Among other things, the parties dispute whether Heimfarth is considered a "managing agent" under Rule 30(b)(6).  The Magistrate Judge considered that Heimfarth is a minority shareholder, but that there were emails between Heimfarth and Kampz that show his involvement in negotiation on behalf of the Klinik.  (Order at 53.)  The Magistrate Judge acknowledged that this is a close question, but that it should be resolved in favor of the party seeking the deposition, so Heimfarth should be considered a managing agent. (*Id.* at 54.)

In regard to the location of the depositions, the Magistrate Judge considered a variety of factors in determining whether the Rule 30(b)(6) deposition of the Klinik—a foreign entity—should occur in the United States or abroad.  (*Id.* at 56–57.)  Though the general rule is that the deposition of a corporation should occur at the corporation's place of business—and deponents should be deposed near their residence or place of work— the relative burdens, considerations of comity, and matters of case management weighed in favor of the depositions occurring in Minneapolis.  (*Id.* at 54, 57.)    Further, the Magistrate Judge was not confident that the depositions of the Klinik, Gawinski, Marquard, and Heimfarth would occur in Germany, since they have all indicated that they do not intend to appear voluntarily, and the parties are likely to dispute the scope of the depositions.  (*Id.* at 61, 63.)  The Magistrate Judge held that the depositions must take

place in Minneapolis, Minnesota, unless the parties agree upon an alternative location or stipulate to an alternative procedure.  (*Id.* at 63–64.)

### C.   Present Issue

The Klinik has appealed the Magistrate Judge's Order.  (*See* Def.'s Obj.)  It argues that the Order erroneously: (1) forces depositions of the Klinik and its German officers, directors, and managing agents to occur in Minneapolis; (2) finds Heimfarth to be considered a "managing agent" under Federal Rule of Civil Procedure 30(b)(6); (3) allows Plaintiffs to go on a "fishing expedition" through the Klinik's patient therapy notes, and (4) requires Plaintiffs to produce documents relating to planned/future developments in only Germany, rather than the entire European Union.  (*Id.* at 1.)  Plaintiffs ask the Court to affirm the Magistrate Judge's Order.  (Pls.' Resp. Obj., May 3, 2023, Docket No. 182.)  The parties then filed supplemental memoranda addressing the impact of the Supreme Court's recent decision in *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 143 S. Ct. 2522 2023), on this issue.  (Def.'s Supplemental Mem., Aug. 4, 2023, Docket No. 202; Pls.' Supplemental Mem., Aug. 9, 2023, Docket No. 207.)

### DISCUSSION

## I.   STANDARD OF REVIEW

"The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential."  *Skukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013); *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007).  Reversal is only appropriate if the order is "clearly erroneous or contrary to

law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3).  For an order to be clearly erroneous, the district court must be "left with the definite and firm conviction that a mistake has been committed."  *Lisdahl v. Mayo Found*., 633 F.3d 712, 717 (8th Cir. 2011) (internal citations omitted).  "[T]he district court has inherent power to review the final decision of its magistrates." *Bruno v. Hamilton*, 521 F.2d 114, 116 (8th Cir. 1975).

## II.   ANALYSIS

The Klinik's objections to the Magistrate Judge's March 29, 2023 Order revolve around a few issues: the location of the depositions of the Klinik and its officers, directors, and managing agents; whether Heimfarth is a managing agent; the grant of Plaintiffs' Request for Production Nos. 18 and 22; and the denial of Klinik's Request for Production No. 6.  Because the Magistrate Judge did not commit clear error in any of these decisions, the Court will affirm the March 29, 2023 Order.

### A.  Deposition Locations

First, the Klinik challenges the Magistrate Judge's requirement that the depositions occur in Minneapolis, Minnesota.  The Klinik asserts that its corporate designee(s) would be available for a U.S.-style deposition under the Federal Rules at the United States Consulate in Frankfurt, Germany, and that Plaintiffs could compel the other individuals to be deposed under the Hague Convention.  (Def.'s Obj. at 2, 7.)

The Court has great discretion in designating the location of taking a deposition, and courts must consider the facts and equities of each individual case.  *Archer Daniels*

*Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 588 (D. Minn. 1999).  Though the general rule is that a deposition of a corporation should occur at the corporation's place of business, that custom is subject to modification when justice requires.  *Willis Elec. Co., Ltd. v. Polygroup Macau Ltd.*, No. 15-34443, 2020 WL 3397359, at *2 (D. Minn. June 19, 2020).  Courts contemplating the proper venue for a foreign deponent should be "keenly sensitive to the promotion of international comity," while also considering if a foreign defendant is within the jurisdiction of the court and is therefore subject to American judicial procedures.  *Minn. Mining & Mfg., Co., Inc. v. Nippon Carbide Indus. Co., Inc.*, 171 F.R.D. 246, 249–50 (D. Minn. 1997).

Considering the facts and equities of this case, it was not clear error for the Magistrate Judge to conclude that the depositions of the Klinik and the individual witnesses should occur in Minnesota.  The Magistrate Judge extensively weighed the relative burdens to the parties, considerations of comity, and matters of case management.  (*See* Order at 58–65.)  Though the relative burdens weigh in favor of the depositions occurring in Germany, comity weighs in favor of the depositions occurring in the United States because the United States has an interest in adjudicating disputes related to United States-based corporations.  (*Id.* at 59–60.)  Case management also heavily weighs in favor of the depositions in Minnesota because, even if United States-style depositions are available at the Consulate in Frankfurt, the depositions could still only be conducted if the witnesses in Germany are willing to testify voluntarily.  (*Id.* at

60.)  The Magistrate Judge is well-suited to consider the facts and equities in complex cases such as this, and the Court finds that he did not commit clear error in weighing the facts and exercising his discretion to order the depositions to occur in the United States.

The Klinik asserts that it does not intend to call as its corporate designee any of the individual deponents who have indicated resistance to appear voluntarily.  (Def.'s Obj. at 3.)  The Klinik further asserts that the Magistrate Judge did not consider whether deposing the Klinik at the Consulate would offend Germany's sovereignty or be contrary to United States interests.  (*Id.* at 2–3.)  But the Magistrate Judge assumed that United States-style depositions are available at the Consulate and considered deposition customs in Germany.  (Order at 60.)  There were other factors considered that also weighed in favor of the Klinik's deposition occurring in the United States, such as the high likelihood of good faith disputes that the Court may need to resolve.  (*Id.* at 62.)  The Magistrate Judge acted well within his discretion in ordering the Klinik's deposition to occur in Minneapolis, Minnesota.

The Klinik also challenges the Magistrate Judge's determination that the officers, directors, and managing agents' depositions should occur in Minneapolis, Minnesota. The Klinik asserts the Magistrate Judge failed to properly analyze all the comity concerns involved.  (Def.'s Obj. at 5.)  The individuals have asserted their constitutional rights as German citizens to only be questioned before a German judge and have expressed

concern that cross-examination and videotaping confidential matters would expose them to potential liability.  (*Id.*)

However, the Magistrate Judge considered these concerns as well.  (Order at 61 ("The Court acknowledges and appreciates their refusal [to be deposed] appears to be based on genuinely held beliefs regarding Germany privacy laws and concerns over anticipated lines of questioning.").)  He ultimately found that these concerns were not outweighed by the fact that the Plaintiffs may not be able to obtain depositions of the individuals in Germany.  (*Id.* at 61–62; 1st Decl. Laura L. Myers, Exs. A–C, May 3, 2023, Docket No. 183-1 (demonstrating that Sigurd Gawinski, Sven Marquardt, and Helmut Heimfarth all refused to participate in a United States-style deposition abroad or at the Consulate in Frankfurt).)  And these witnesses are the only Klinik employees that the Klinik has ever identified as having relevant knowledge to this litigation.  (2nd Decl. Laura L. Myers, Ex. 13, at 126–28, June 3, 2022, Docket No. 109-1.)  The Magistrate Judge did not commit clear error in finding that the necessity of these witnesses and the low likelihood that they would successfully be deposed in Germany outweighs comity concerns.

Moreover, though the Klinik asserts that Plaintiffs could alternatively obtain these individuals' depositions in Germany by means of the Hague Convention, the Supreme Court has explained that the Hague Convention is not the exclusive and mandatory procedure for obtaining foreign discovery.  *Societe Nationale Industrielle Aerospatiale v. U.D. Dist. C. for S. Dist. of Iowa*, 482 U.S. 522, 529 (1987).  Other federal courts have

acknowledged that the Federal Rules of Civil Procedure remain the normal avenue for federal litigation involving foreign national parties, even if the Hague Convention could apply. *E.g., Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d 525, 533 (D.N.J. 2009).

The Klinik also maintains that under German law, an employer cannot require its employee to testify as a witness before a United States court. (Def.'s Obj. at 5.) It relies on *In re Petition of Boehringer Ingelheim Pharmaceuticals, Inc.*, 745 F.3d 216, 219 (7th Cir. 2014), which reversed an order requiring deposition of German employees in the United States. However, there is a key factual difference between *Boehringer* and this litigation: the Seventh Circuit explicitly noted that the individuals called for deposition in *Boehringer* were not officers, directors, or managing agents under Federal Rule of Civil Procedure 30(b)(6). *Id.* at 218–19. Though typically foreigners who are not in the United States are beyond the subpoena power of American courts, federal courts may order officers, directors, or managing agents to appear for a deposition in the forum district even if the deponent is a foreign citizen and resident. *See id.* at 222 (Hamilton, D., dissenting) (collecting cases).

The Magistrate Judge considered the Klinik's comity concerns, and the Court is not left with a "definite and firm conviction that a mistake has been committed." *Lisdahl,* 633 F.3d at 717. The Court will therefore affirm the Magistrate Judge's order for the

depositions of the Klinik and its officers, directors, and managing agents to occur in the United States.

### B. Heimfarth Deposition

The Klinik next objects to the Magistrate Judge's determination that Helmut Heimfarth qualifies as a managing agent of the Klinik under Federal Rule of Civil Procedure 30. Rule 30(b)(6) provides that a party may name as a deponent a public or private corporation or other entity. Fed. R. Civ. P. 30(b)(6). An opponent may name a particular corporate person to depose on behalf of the corporation, but that person must be "'an officer, director, or managing agent' of the corporate party in order to command that person's appearance." *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 254 (D. Minn. 2021) (quoting *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 513 (D.S.D. 2015)). In determining whether an employee is considered a managing agent, district courts consider several factors, such as:

> 1) whether the individual is invested with general powers allowing [them] to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at [the] employer's request, in response to the demand of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation.

*Id.* (quoting *Odsather v. Fay Servicing, LLC,* No. C18-0289-JCC, 2019 WL 11005500, at *1 (W.D. Wash. Jan. 10, 2019)).

The Magistrate Judge acknowledged that Heimfarth is an outside auditor and tax advisor, but nevertheless concluded that he is a managing agent for purposes of Rule 30 because there are several communications that indicate involvement in the Klinik.  (Order at 52–53.)  Specifically, there were emails between Heimfarth and Kampz that the Magistrate Judge interpreted to be Heimfarth "speaking on the Klinik's behalf with respect to the transaction."  (*Id.* at 53.)  Heimfarth also recently reached out to Kampz again, seeking information related to this litigation and the Klinik's defense.  (*Id.* at 54.)  Though it was a close call, the Magistrate Jude held that Heimfarth is considered a managing agent because "doubts should be resolved in favor of the party seeking the deposition."  (*Id.* (quoting *Animal Legal Def. Fund v. Wild*, No. 17-4496, 2019 WL 13159451, at *4 (D. Minn. Feb. 20, 2019)).)

The Klinik argues that the Magistrate Judge's determination that Heimfarth is a managing agent is clearly erroneous because many of the emails he relied upon are several years old and Heimfarth has only recently communicated with Kampz because he is the sole individual associated with the Klinik with whom Kampz has an amicable relationship.  (Def.'s Obj. at 10.)  But Heimfarth is supposedly an outside auditor and tax advisor to the Klinik.  Even if he is the only one who has an amicable relationship with Kampz, that he is contacting Kampz regarding this litigation suggests that he is acting as more than simply an outside auditor and tax advisor.  Outside auditors and tax advisors usually do not usually help corporations construct their defense to ongoing litigation.  *See*

*Atmosphere Hospitality Mgmt, LLC v. Curtullo*, No. 5:13-5040, 2015 WL 136120, at *15 (D.

S.D. Jan. 9, 2015) (designating an individual who defendants asserted was an

"independent contractor" as a managing agent in part because the "independent

contractor" did many tasks that independent contractors typically do not do, such as

signing checks, attending meetings with accountants, and entering into contracts with

vendors).  Because the Magistrate Judge did not commit clear error in determining

Heimfarth qualifies as a managing agent, the Court will affirm this determination.

### C.  Request for Production Nos. 18 and 22

The Klinik asserts that the Magistrate Judge erred in compelling it to produce

patient files responsive to Request for Production Nos. 18 and 22.  The Magistrate Judge

held that the Klinik "shall produce patient files responsive to these requests **if patient files**

**are the only reasonably reliable means sufficient to identify** the number of people from

or who reside in the United States that the Klinik has communicated with regarding its

addiction treatment services or to whom the Klinik has provided addiction treatment

services."  (Order at 41 (emphasis added).)  Based on that language, the Klinik maintains

that it need not produce patient files because its intake and invoicing files—which have

been produced—are the most reasonably reliable means to identify the number of people

from or residing in the United States.  (Def.'s Obj. at 10.)

A plain reading of the Magistrate Judge's Order demonstrates that the Klinik need

not produce all patient files.  Request for Production Nos. 18 and 22 seek information in

the aggregate, rather than **all** documents relating to **any** communications.  (Order at 35.)

If, for example, the Klinik has sent billing invoices to individuals from or who reside in the United States, then it need not encroach upon those individuals' private patient records. (*Id.*) The billing records suffice, and it need not produce their patient files.

The Klinik also asserts that the Magistrate Judge erred in his determination that the production of patient files is not prohibited by the European Union's General Data Protection Regulation ("GDPR"). When it is necessary to seek evidence abroad, "the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Societe*, 482 U.S. at 547. In suits involving extraterritorial discovery, "[t]he exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and . . . the governments whose statutes and policies they invoke." *Id.* at 546. The party relying on foreign law to resist discovery has the burden to show such law applies to the discovery at issue. *Grupo Petrotemex, S.A. De C.V. v. Polymetrix AG*, No. 16-2401, 2019 WL 2241862, at *2 (D. Minn. May 24, 2019).

The Klinik does not refute the Magistrate Judge's conclusion that "GDPR permits the processing and transfer of 'data concerning health' when it 'is necessary for the establishment, exercise or defense of legal claims.'" (Order at 31.) Rather, the Klinik challenges the Magistrate Judge's finding that the patient data is necessary in this litigation and thus may be processed and transferred under the GDPR. (Def.'s Obj. at 11.) The Magistrate Judge considered a declaration from a German information technology

attorney who stated that the patient files are unnecessary.  However, the Magistrate

Judge disagreed with the German attorney and concluded that the patient files would be

highly relevant to the claims and defenses in this litigation.  (Order at 30–31.)  Plaintiffs

must show that the Klinik treated, communicated with, and received revenue from

patients who are from or reside in the United States to succeed on their claims.  (*Id.* at

35.)  Such evidence would "'go[] to the heart' of the issue of whether there has been a

substantial impact on United States commerce."  (*Id.* at 34–35.)  It was not clearly

erroneous for the Magistrate Judge to conclude that information about citizenship or

residence—which the Klinik does not refute is key in this litigation—could be in the

patient files.

The Klinik also argues that searching patient files, which were all hand-written prior

to 2015, is not proportional to the needs of the case and it is not certain that the patient

files would contain citizenship/residence information because it is not always relevant to

addiction treatment or psychotherapy services.  The Magistrate Judge considered both

proportionality and relevance, but ultimately concluded that they were not outweighed

by the importance of the patient residence and citizenship information to this litigation.

(*See* Order at 33–41.)  The Magistrate Judge did not commit clear error in balancing these

factors.  (Order at 40.)  If there is an alternative reasonably reliable means to identify the

number of people from or who reside in the United States whom the Klinik has

communicated with regarding its services or to whom the Klinik has provided treatment, then the Klinik need not produce those particular patient files.  (*Id.* at 40–41.)

In supplemental briefing, the Klinik further asserted that it need not produce its patient files because they are no longer relevant in light of the Supreme Court's recent decision in *Abitron Austria GmbH v. Hectronic International, Inc*.  Though *Abitron* is certainly relevant to this case, the Klinik misunderstands its impact at this stage of the litigation.

The Supreme Court in *Abitron* considered the foreign reach of two provisions of the Lanham Act that prohibit trademark infringement: 15 U.S.C. §§ 1114(1)(a) and 1125(a).  *Abitron*, 143 S. Ct. at 2527.  Hectronic, an American company, brought trademark infringement claims against several foreign companies (collectively, "Abitron").  *Id.*  The Supreme Court reiterated that there is a "presumption against extraterritoriality," meaning that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States."  *Id.* at 2528 (citation omitted).  Because the Lanham Act does not contain an express statement of extraterritorial application, and because the Court found that the provisions at issue were not a "rare statute that clearly evidences extraterritorial effect despite lacking an express statement of extraterritoriality," the Court held that neither statute applies abroad.  *Id.* at 2529.  The relevant inquiry, therefore, "turns on the location of the [infringing] conduct."  *Id.* at 2531.

Relevant to this case, the Supreme Court stated that when a Lanham Act claim "involves both domestic and foreign activity, the question is whether the conduct relevant to the statute's focus occurred in the United States.  If that conduct occurred in the United States, then the case involves a permissible domestic application of the statute even if other conduct occurred abroad."  *Id.* at 2532 (cleaned up).  However, "if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory."  *Id.* (quoting *RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 337 (2016)).  The infringing "use in commerce" of a trademark "provides the dividing line between foreign and domestic applications" of the Lanham Act.  *Id.* at 2534.

The Klinik asserts that its patient files are no longer relevant in light of *Abitron* because they relate to the Klinik's conduct in Germany.  (Def.'s Supplemental Mem. at 5.)  But the Court is unpersuaded that *Abitron* impacts the motion to compel analysis because the requested foreign evidence may still shed light on domestic activity.  Further, one of the few courts that has had the opportunity to apply *Abitron* similarly found that evidence of foreign conduct may be relevant in a case based on domestic conduct.  In *Rockwell Automation, Inc. v. Parcop S.R.L.,* 2023 WL 4585952, at *2 (D. Del. July 18, 2023), the District of Delaware considered whether plaintiff Rockwell could only rely on foreign conduct to support its trademark infringement claims.  It concluded that Rockwell may introduce evidence of defendant's infringement in Europe as circumstantial

evidence that the defendant made infringing domestic sales, without offending *Abitron*, because the "focus" of Rockwell's trademark allegation was defendant's infringing use in commerce in the United States.  *Id.* at *2–3.

Applying the same logic here, the Klinik's patient files may still be relevant under *Abitron* provided the focus of Plaintiffs' claims is on domestic conduct.  The Klinik has produced other evidence that demonstrates it has treated U.S. patients.  (Suppl. Decl. Laura L. Myers, Ex. M, Aug. 9, 2023, Docket No. 210.)  Such treatment of U.S. patients may serve as circumstantial evidence that the Klinik has used advertising and promotional materials to reach American patients.  (*See, e.g.,* 2nd Decl. Laura L. Myers, Ex. 2, at 9–10 (demonstrating Plaintiffs' efforts to identify the Klinik's contact with U.S. individuals; Suppl. Decl. Laura L. Myers, Ex. P, at 4, Aug. 9, 2023, Docket No. 211 (demonstrating many U.S.-style domain names redirect to the Klinik's website).)   Its patient records may therefore still be relevant to Plaintiffs' claims.

Of course, *Abitron* will be highly pertinent when this case reaches the summary judgment stage.  However, until then, *Abitron* does not justify the Klinik digging in its heels and resisting basic discovery, and the Court will not reverse the Magistrate Judge's discovery order based upon it.

Because the Klinik has not shown that Request for Production Nos. 18 and 22 would violate the GDPR, because the Magistrate Judge did not clearly err in balancing the interests in this case and granting Plaintiffs' request to compel these productions, and

because *Abitron* does not disturb the Magistrate Judge's analysis, the Court will affirm the Magistrate Judge's Order.

### D.  Request for Production No. 6

Lastly, the Klinik asserts that the Magistrate Judge erred in limiting its Request for Production No. 6 to only planned or future development in Germany, rather than the entire European Union.  However, the Klinik has not explained why the entire European Union is relevant and proportional here.   In fact, the Klinik's only argument is that Germany is part of the European Union and uses European trademarks.  This does not rise to the level of clear error, so the Court will affirm the Magistrate Judge's disposition of Request for Production No. 6.

### CONCLUSION

The Magistrate Judge did not commit clear error in finding Heimfarth qualifies as a Rule 30(b)(6) managing agent and ordering the depositions of the Klinik and its officers, directors, and managing agents to occur in Minneapolis, Minnesota.  The Court will therefore affirm the Magistrate Judge's March 29, 2023 Order as it pertains to the depositions.  The Court will also affirm the Magistrate Judge's Order on the parties' motions to compel because (1) Plaintiffs' Request for Production Nos. 18 and 22 do not violate German and European Union law and are proportional and relevant to the needs of this case, and (2) the Magistrate Judge properly narrowed the Klinik's Request for Production No. 6 to only development in Germany.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Defendant's Objection Under L.R. 72.2 to the Magistrate Judge's Order Dated

   March 29, 2023 [Docket No. 178] is **DENIED;** and

2. The Magistrate Judge's Order Dated March 29, 2023 [Docket No. 172] is

   **AFFIRMED**.


DATED:  September 28, 2023
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                 United States District Judge