UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Hazelden Betty Ford Foundation, *a Minnesota nonprofit corporation*, and Elizabeth B. Ford Charitable Trust,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>My Way Betty Ford Klinik GmbH, *a German entity*,<br><br>　　　　Defendant. | Case No. 20-cv-409 (JRT/TNL)<br><br>**REPORT & RECOMMENDATION** |

Cara S. Donels, Fredrikson & Byron P.A., 111 East Grand Avenue, Suite 301, Des Moines, IA 50309; and Laura L. Myers, Luke P. de Leon, and Timothy M. O'Shea, Fredrikson & Byron P.A., 60 South Sixth Street, Suite 1500, Minneapolis, MN 55402 (for Plaintiffs); and

Chad A. Snyder and Michael H. Frasier, Rubric Legal LLC, 111 Third Avenue South, Suite 110, Minneapolis, MN 55401; and Jiwon Juliana Yhee, Michael S. Golenson, and Riebana Elisabeth Sachs, Masuda, Funai, Eifert & Mitchell, Ltd., 203 North LaSalle Street, Suite 2500, Chicago, IL 60601 (for Defendant).

## I. INTRODUCTION

This matter comes before the Court on Plaintiffs Hazelden Betty Ford Foundation and Elizabeth B. Ford Charitable Trust's (collectively, "Hazelden Betty Ford") Motion for Sanctions Against Defendant for Failure to Comply with this Court's Order Dated March 29, 2023, ECF No. 220. A hearing was held. ECF No. 237. Laura L. Myers and Timothy M. O'Shea appeared on behalf of Hazelden Betty Ford. Michael S. Golenson and Chad A. Snyder appeared on behalf of Defendant My Way Betty Ford Klinik GmbH

1

("the Klinik").

In light of Hazelden Betty Ford's request for terminating sanctions, the Court has issued its decision in the form of a report and recommendation to the Honorable John R. Tunheim, District Judge for the United States District Court for the District of Minnesota.

## II. BACKGROUND

Previously, Hazelden Betty Ford moved to compel the deposition testimony of Sigurd Gawinski, the Klinik's chief executive officer; Sven Marquardt, the Klinik's general manager and a director; and Helmut Heimfarth, whom the Court determined was a managing agent of the Klinik for purposes of the motion. Mar. 29, 2023 Ord. [hereinafter "March Order"], ECF No. 172 at 46-47 & n.11, 52-55,[1] *affirmed*, Sept. 28, 2023 Ord. [hereinafter "September Order"], ECF No. 215; *see generally* ECF No. 106. Gawinski, Marquardt, and Heimfarth all reside in Germany. March Order, ECF No. 172 at 46-47. In relevant part, the Court granted Hazelden Betty Ford's motion and ordered that the depositions of these individuals take place in Minneapolis, Minnesota, absent agreement by the parties to take these depositions at a mutually agreeable alternative location or by stipulation to an alternative procedure afforded by the Federal Rules of Civil Procedure. March Order, ECF No. 172 at 55-65. In doing so, the Court acknowledged that the refusal of these individuals to appear voluntarily for depositions in Germany "appears to be based on genuinely held beliefs regarding German privacy laws and concerns over anticipated lines of questioning" and "the fact that the parties are engaged in addiction treatment services has interjected a host of issues related to patient

---

[1] The Court cites to the pagination generated by the Court's electronic filing system.

confidentiality and the safeguarding of deeply private medical information into this litigation." March Order, ECF No. 172 at 61. The Court also stated that a

> [f]ailure to comply with any provision of th[e] Order . . . shall subject the non-complying party . . . to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

March Order, ECF No. 172 at 66.

The Klinik appealed the March Order. *See generally* 178. The March Order was affirmed. *See generally* September Order, ECF No. 215.

There is no dispute that Gawinski, Marquardt, and Heimfarth have elected not to comply with the March Order. Def. Mem. Opposing Mot., ECF No. 232 at 1 ("Their sincerity does not alter the fact that the witnesses have chosen not to comply with the [March Order] that [the Klinik] produce them to be deposed in Minnesota."). Hazelden Betty Ford now moves for sanctions under Rule 37(b) based on the Klinik's failure to produce these individuals for deposition.[2]

### III. ANALYSIS

**A. Legal Standard**

"Rule 37(b) authorizes sanctions for failure to comply with discovery orders." *Cincinnati Ins. Co. v. Jacob Rieger & Co., LLC*, 58 F.4th 386, 392 (8th Cir. 2023)

---

[2] Hazelden Betty Ford also moves for sanctions under the Court's inherent power. Because the Court finds that Rule 37 is "up to the task," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991), the Court's decision rests on Rule 37 rather than its inherent power. *Cf. Schlafly v. Eagle Forum*, 970 F.3d 924, 936-37 (8th Cir. 2020).

3

(quotation omitted). Under Rule 37(b)(2),[3] sanctions may be imposed "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . ." Sanctions may include, but are not limited to, "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims"; "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i), (ii), (vi).

"The application of Rule 37(b) is left to the district court's discretion, including 'the decision to impose a sanction, the nature of the sanction imposed, and the factual basis for the court's decision.'" *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, No. 17-cv-5009 (JRT/KMM), 2020 WL 1910589, at *11 (D. Minn. Apr. 20, 2020) (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999)), *report and recommendation adopted*, 2020 WL 4915832 (D. Minn. Aug. 27, 2020); *see also, e.g.*, *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) ("The district court, familiar with the case and counsel, receives substantial deference in determining sanctions."). "[T]he district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp.*, 186 F.3d at 1022; *accord Mgmt. Registry*, 2020 WL 1910589, at *11.

"However, 'the district court's discretion narrows as the severity of the sanction or

---

[3] This is not a situation under Rule 37(d) in which a deposition was noticed and then there was a failure to appear. *See* Pls. Mem. in Supp., ECF No. 222 at 25.

4

remedy it elects increases.'" *Mgmt. Registry*, 2020 WL 1910589, at *11 (quoting *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)). "Entry of default judgment as a sanction should be a 'rare judicial act.'" *United States v. Yennie*, 585 F. Supp. 3d 1194, 1199 (D. Minn. 2022) (quoting *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977)). Because "default judgment is among the harshest of sanctions a court can impose, it is the rare case where a party's misconduct justifies entry of default judgment." *Vogt v. MEnD Corr. Care, PLLC*, No. 21-cv-1055 (WMW/TNL), 2023 WL 2414551, at *15 (D. Minn. Jan. 30, 2023), *report and recommendation adopted*, 2023 WL 2414531 (D. Minn. Mar. 8, 2023).

> To impose an "extreme sanction," such as entering default against a defendant or dismissing a party's claim, the "strong policy in favor of deciding a case on its merits" demands a showing of egregiousness that justifies depriving the litigant of its chance to be heard. *See Chrysler Corp.*, 186 F.3d at 1020-21. "To justify [such a sanction], Rule 37 requires: '(1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party.'" *Sentis Gr., Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009) (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)).

*Mgmt. Registry*, 2020 WL 1910589, at *11 (alteration in original). "When the facts show willfulness and bad faith, . . . the district court need not investigate the propriety of a less extreme sanction." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817-18 (8th Cir. 2001); *accord Yennie*, 585 F. Supp. 3d at 1199.

Further, instead of or in addition to sanctions imposed under Rule 37(b)(2)(A), the Court must also order the payment of "reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances

5

make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

### B. Sanctions for Non-Compliance with the March Order

Here, there is really no dispute that (1) there was an order compelling the depositions of Gawinski, Marquardt, and Heimfarth in Minnesota; (2) their violation of the order was willful, *see Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000) (willful disobedience "requires only that [the individual] acted intentionally as opposed to accidentally or involuntarily," and does not require a finding that the individual acted in bad faith (quotation omitted)); and (3) Hazelden Betty Ford has been prejudiced as a result. *See* Def. Mem. Opposing Mot., ECF No. 232 at 9 (first factor met and other factors "not absent"). Nor is there really any dispute that sanctions should be imposed. The Klinik itself "accepts and agrees . . . that [it] should not be permitted to submit testimony from any of [these three individuals] – either in the form of affidavits at summary judgment or testimony at trial." Def. Mem. Opposing Mot., ECF No. 232 at 6. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii).

Hazelden Betty Ford contends this is not enough. Suffice it to say, Hazelden Betty Ford characterizes Gawinski, Marquardt, and Heimfarth's refusal to sit for depositions in Minnesota as the latest in what it contends has been "a pattern of delay tactics."[4] Pls. Mem. in Supp., ECF No. 222 at 31; *see* Pls. Mem. in Supp., ECF No. 222 at 11-21.

---

[4] As to Hazelden Betty Ford's suggestion that the Klinik's counsel was "complicit[] in or orchestrat[ed]" such "litigation tactics," Pls. Mem. in Supp., ECF No. 222 at 39, the Court states only that, in its view, the Klinik's counsel has acted within the permissible bounds of advocacy concerning the difficult and sensitive issues related to compelling testimony from non-United States citizens residing in a foreign country and surrounding the production of personal health information. Indeed, as Hazelden Betty Ford itself stated, the Klinik's "position did not change even after its own attorneys, Hazelden [Betty Ford], and the Court repeatedly warned of possible sanctions, including default judgment, if it did not produce Gawinski, Marquardt, and Heimfarth for depositions pursuant to the Federal Rules."). Pls. Mem. in Supp., ECF No. 222 at 32.

6

Hazelden Betty Ford describes beginning negotiations for depositions and the initial refusal of these individuals to sit for U.S.-style depositions; one motion it brought regarding discovery responses and the taking of depositions; the appeal of this Court's ruling on that motion; and continuing discussions the parties had regarding the depositions of these individuals following that appeal as well as the Klinik's 30(b)(6) deposition[5] and other discovery. Hazelden Betty Ford asserts that it is prejudiced because the Klinik "has only ever identified Gawinski, Marquardt, and Heimfarth as having relevant knowledge on which it intends to rely"[6]; the majority of the discovery produced by the Klinik is in German and "the true meaning and intentions behind those documents can only be adequately explored through questioning of the witnesses who authored or received those documents or at least have personal knowledge of the information and events discussed therein"; and the Klinik's 30(b)(6) deposition is inadequate.[7] Pls. Mem. in Supp., ECF No. 222 at 28-30. According to Hazelden Betty Ford, "[i]t is clear that [the Klinik] had no intention of meaningfully engaging in discovery, or this lawsuit, and such a refusal can only be remedied by default judgment." Pls. Mem. in Supp., ECF No. 222 at 31.

In the event the Court is not inclined to recommend that default judgment be entered, Hazelden Betty Ford requests that the following facts be deemed admitted:

> (a) that [the Klinik] has used BETTY FORD, without

---

[5] This deposition is the subject of a second motion to compel filed at the same time as the instant motion.
[6] While Betty Ford claims that these three individuals were "the *only* witnesses [the Klinik] has ever identified as having relevant knowledge," Pls. Mem. in Supp., ECF No. 222 at 12 (emphasis added); *see also* Pls.' Mem. in Supp., ECF No. 222 at 28, the Klinik also identified seven other individuals who were not current or former Klinik employees as part of its Rule 26(a)(1) disclosures. ECF No. 223-1 at 4-5.
[7] *See supra* n.5.

7

> Hazelden[ Betty Ford's] authorization, to offer and promote its services in the U.S.; (b) that [the Klinik] has provided substance abuse and addiction treatment services to patients who are from or reside in the U.S.; (c) that [the Klinik] has received revenue from patients who are from or reside in the U.S.; (d) that [the Klinik] has received communications from third parties who are from or reside in the U.S. demonstrating confusion about the relationship between Hazelden [Betty Ford] and [the Klinik] based on [the Klinik's] unauthorized use of BETTY FORD; and (e) [the Klinik's] unauthorized use of BETTY FORD was de minimis from at least 2006 until 2012.

Pls. Mem. in Supp., ECF No. 222 at 40-41. Hazelden Betty Ford also requests that the Klinik be prohibited from relying on declarations or testimony from Gawinski, Marquardt, and Heimfarth for purposes of summary judgment or at trial. Lastly, Hazelden Betty Ford requests a permissive adverse inference instruction, namely, that the jury be instructed that the Klinik "was ordered to produce Gawinski, Marquardt, and Heimfarth for depositions in Minneapolis, but [the Klinik] refused to do so and that the jury may infer that their testimony would have been harmful to [the Klinik's] defenses." Pls. Mem. in Supp., ECF No. 222 at 43.

Fully acknowledging the frustration brought on by Gawinski, Marquardt, and Heimfarth's refusal to come to Minnesota and be deposed in this litigation, the Klinik maintains that such refusal is not in bad faith. The Klinik points out that their refusal "is not new information" and is grounded in an effort "to protect their individual rights under German law and to keep themselves from being exposed to liability under German or European law." Def. Mem. Opposing Mot., ECF No. 232 at 2; *see also* Def. Mem. Opposing Mot., ECF No. 232 at 9 ("The witnesses, for good-faith fear of criminal

8

prosecution in their individual capacities and unwilling to give up their constitutional rights as German citizens, have chosen not to comply with the order that they appear for depositions in Minnesota."). Emphasizing the context of their refusal, the Klinik distinguishes Gawinski, Marquardt, and Heimfarth's actions from other "obstructionist" tactics where default judgment has been imposed. Def. Mem. Opposing Mot., ECF No. 232 at 4. The Klinik emphasizes that Hazelden Betty Ford has

> received thousands of pages of documents, has access to [the Klinik's] website, social media, and whatever other marketing materials might conceivably show that it is using the disputed mark in the United States, has been provided information on the number of U.S. residents who have sought treatment at [its] German facility, and will have the opportunity to depose [its] corporate designee over the course of two days.

Def. Mem. Opposing Mot., ECF No. 232 at 14. And, as noted above, the Klinik agrees that it "should not be permitted to submit testimony from any of the three witnesses – either in the form of affidavits at summary judgment or testimony at trial." Def. Mem. Opposing Mot., ECF No. 232 at 6. Essentially, it is the Klinik's position that this is enough under the circumstances.

As to the other sanctions sought in the alternative, the Klinik contends that the request that certain facts be deemed admitted is premature and speculative because Hazelden Betty Ford has not yet taken the Klinik's 30(b)(6) deposition and it is "committed to presenting a fully prepared witness in Minnesota." Def. Mem. Opposing Mot., ECF No. 232 at 6. It is the Klinik's position that Hazelden Betty Ford "will have a full opportunity to pursue their questions about [the Klinik's] use of the [BETTY FORD] mark in U.S. commerce and the extent to which such use (if any) may have created a

likelihood of customer confusion." Def. Mem. Opposing Mot., ECF No. 232 at 7. The Klinik also contends that because adverse inference instructions "should be employed only where there is evidence of a desire to suppress the truth" and Hazelden Betty Ford "has not shown that any of the three witnesses are likely to offer evidence that [the Klinik] has used the [BETTY FORD] mark in commerce – or used the mark at all – in the United States," such an instruction would not be appropriate here. Def. Mem. Opposing Mot., ECF No. 232 at 7. Nor would such a "vague instruction" be sufficiently tailored. Def. Mem. Opposing Mot., ECF No. 232 at 7.

### 1. Non-Monetary Sanctions

It bears repeating that Gawinski, Marquardt, and Heimfarth are all German citizens who reside in Germany. Their refusal to sit for U.S.-style depositions derives from concerns such depositions may implicate foreign privacy laws and the assertion of their rights as German citizens. Such weighty reasons do not, in this Court's view and on the present record, equate to the sort of egregiousness and bad faith warranting the extreme sanction of default judgment. *See Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 211 (1958) ("It is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign."). In that regard, this case is distinguishable from *S.E.C. v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013), relied on by Hazelden Betty Ford, which did not implicate these sorts of considerations. This case is also distinguishable from *Angiodynamics, Inc. v. Biolite AG*, 991 F. Supp. 2d 283 (D. Mass. 2014). In

10

*Angiodynamics*, the basis for the non-citizen defendant's refusal to attend his deposition in the United States was because the defendant risked arrest on an outstanding warrant related to a civil contempt order that had been issued in connection with that defendant's defiance of a preliminary injunction that had been entered in the case. 991 F. Supp. 2d at 286-89, 291. It was the defendant's "own misconduct in defying the injunction and then refusing to appear at the hearing on . . . [the] motion for contempt—out of fear that he might have to face the consequences of his own gross misconduct—that ha[d] placed him in the awkward position he now f[ound] himself." *Id.* at 291. Under these circumstances, *Angiodynamics* concluded that a sanction of anything less than default judgment "would actually reward [the defendant's] conduct, since he would be officially relieved of the obligation to come to this country, something he is determined to avoid in any event." *Id.* at 294-95. Nor can Hazelden Betty Ford cobble together and use as justification every frustration it may have with the challenges of suing a German company in the United States and the litigation process generally. The inescapable tension with the laws governing and rights afforded to citizens of another country counsels against entry of default judgment under the unique circumstances of this case and in favor of lesser sanctions. *See, e.g.*, *Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014).

    The Court likewise concludes the requested alternative sanction of deeming certain facts to be admitted to be a disproportionate response when considering the potential impact of *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412

(2023), on this litigation and the Klinik's outstanding 30(b)(6) deposition.[8] *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986). In *Abitron*, the Supreme Court held that, "when a Lanham Act claim 'involves both domestic and foreign activity, the question is whether the conduct relevant to the statute's focus occurred in the United States. If that conduct occurred in the United States, then the case involves a permissible domestic application of the statute even if other conduct occurred abroad.'" September Order, ECF No. 215 at 20 (quoting 600 U.S. at 424 (quotations and citations omitted)). "But if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Abitron*, 600 U.S. at 424 (quotation omitted); *accord* September Order, ECF No. 215 at 20. As the trial judge previously observed, "*Abitron* is certainly relevant to this case" and "will be highly pertinent" at summary judgment. September Order, ECF No. 215 at 19, 21.

Hazelden Betty Ford requests, among other things, that the Klinik—a German entity operating a treatment facility in Germany—be deemed to have used the marks in question to promote the Klinik's services in the United States, provided services to patients who are from or reside in the United States, received revenue from patients who are from or reside in the United States, and received communications from individuals who are from or reside in the United States demonstrating confusion about the relationship between Hazelden Betty Ford and the Klinik based on the use of the marks— arguably resulting in the elimination of any *Abitron* issue and thus a comparative windfall

---

[8] *See supra* n.5.

to Hazelden Betty Ford. Yet, among the topics noticed for the Klinik's 30(b)(6) deposition are the Klinik's "communications with third-parties that are citizens of or have lived in the United States regarding its addi[c]tion treatment services" (Topic 19); "treatment of third-parties that are citizens of or have lived in the United States" (Topic 20); and "revenues . . . received from any third-parties that are citizens of or have lived in the United States" (Topic 22).[9] ECF No. 229-7 at 8. The opportunity to obtain discovery on the very facts Hazelden Betty Ford would have be deemed admitted is significant, particularly when the admission of such facts would be largely tantamount to an entry of judgment in Hazelden Betty Ford's favor. *Cf. Hawkeye Gold, LLC v. China Nat'l Materials Indus. Import & Export Corp.*, 889 F.4th 1023, 1037 (8th Cir. 2023). To be clear, the Court is not saying that the availability of a 30(b)(6) deposition excuses Gawinski, Marquardt and Heimfarth's non-compliance with the March Order. It does not. When considering the totality of the circumstances and the proportionality of the requested sanction, however, the admission of *these facts* in *this case* under *these circumstances* gives the Court considerable pause.

The Court does, however, recommend that, depending on how the case develops at trial, the trial judge in his sound discretion consider imposition of an adverse inference instruction that the Klinik was ordered to produce Gawinski, Marquardt, and Heimfarth for depositions in Minneapolis, Minnesota; the Klinik failed to comply with that order; and the jurors may, but are not required to, infer that their testimony would have been

---

[9] The Klinik is reminded of its obligation to prepare its designee adequately and that the failure to provide a knowledgeable witness is sanctionable.

13

harmful to the Klinik's defenses. *See First Fin. Sec., Inc. v. Lee*, No. 14-cv-1843 (PJS/SER), 2016 WL 7971777, at *17 (D. Minn. Jan. 19, 2016) (recommending imposition of adverse inference instruction under Rule 37(b)(2)), *report and recommendation adopted in part and rejected in part*, 2016 WL 881003 (D. Minn. Mar. 8, 2016); *see also S.E.C. v. Hong*, No. CV 20-04080-MCS (RAOx), 2021 WL 4803497, at *7 (C.D. Cal. Sept. 17, 2021) (recommending imposition of adverse inference instruction based on defendants' failure to appear for their depositions), *report and recommendation accepted*, 2021 WL 4923310 (C.D. Cal. Oct. 21, 2021). In its Rule 26(a)(1) initial disclosures, the Klinik identified Gawinski, Marquardt, and Heimfarth as the three current or former employees of the Klinik with relevant knowledge. ECF No. 223-1 at 3-4. Hazelden Betty Ford has been prevented from deposing these key individuals. "[D]iscovery is a[n] investigatory tool intended to help litigants gain an understanding of the key persons, relationships, and evidence in a case and . . . the veracity of those persons and purported evidence . . . ." *Sentis Grp.*, 763 F.3d at 926; *see Avionic Co. v. General Dynamics Corp.*, 957 F.2d 555, 559 (8th Cir. 1992) ("In the context of Rule 37(b)(2) motions, 'prejudice' exists if the failure to make discovery impairs the opponent's ability to determine the factual merits of the party's claim.").

This Court ordered Gawinski, Marquardt, and Heimfarth to appear in Minneapolis, Minnesota, for their depositions. It is undisputed that they have willfully failed to comply with that order. It is also undisputed that Hazelden Betty Ford is prejudiced by their non-compliance and the inability to depose these individuals. Should the trial judge ultimately exercise his sound discretion to give an adverse inference instruction, that

14

result would not be as severe as recommending default judgment or the admission of certain facts. *See First Fin. Sec.*, 2016 WL 7971777, at *17. As a permissive instruction, it is also the least severe sort of adverse inference instruction. *See Hall v. Ramsey Cty.*, No. 12-cv-1915 (DSD/LIB), 2013 WL 12141435, at *3 (D. Minn. Apr. 8, 2013) (describing three types of adverse inference instructions).

### 2. Monetary Sanctions

Rule 37(b)(2) also provides for the payment of expenses. Instead of or in addition to other sanctions, "[t]he court must order the disobedient party, the attorney advising that party, or both to pay reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Hazelden Betty Ford seeks expenses not only in connection with the instant motion, but also in connection with its prior motion to compel, including responding to the Klinik's objection to the March Order that directed Gawinski, Marquardt, and Heimfarth to appear in Minneapolis, Minnesota, for their depositions.[10] The Klinik opposes the request for expenses. The Klinik contends that expenses incurred by Hazelden Betty Ford related to the motion to compel that *led to* the March Order are not "caused by" the subsequent failure of Gawinski, Marquardt, and Heimfarth to comply with that Order. The Klinik also contends that its failure to produce these witnesses was "substantially justified under these circumstances" and "it would be unjust to impose

---

[10] For the reasons stated above, *see supra* n.4, no further comment is needed regarding Hazelden Betty Ford's allegations regarding opposing counsel.

15

financial sanctions on [the Klinik]" because the Klinik "cannot request from the witnesses what is not permitted by German law." Def. Mem. Opposing Mot., ECF No. 232 at 26.

Expenses incurred by Hazelden Betty Ford in connection with its prior motion to compel and the Klinik's objection to the March Order thereon are not warranted. First, in the March Order, this Court previously ruled that "[e]ach party shall bear its own costs and attorney fees" in connection with Hazelden Betty Ford's motion to compel. March Order, ECF No. 172 at 66. Second, attorney fees and costs incurred by Hazelden Betty Ford to obtain the March Order cannot be said to be "caused by" a later failure to comply with that Order. Third, the Court will not penalize the Klinik for pursuing its right to seek review of the undersigned's ruling. *See* Fed. R. Civ. P. 72(a). Fourth, it can hardly be said that the issuance of *Abitron* in the midst of these proceedings and the additional briefing permitted as a result were caused by Gawinski, Marquardt, and Heimfarth's non-compliance with the Court's March Order. *See generally* ECF Nos. 199, 200, 201.

As for the instant motion for sanctions, however, this motion *was* caused by Gawinski, Marquardt, and Heimfarth's failure to comply with the March Order and thus expenses Hazelden Betty Ford has incurred related to *this motion* were caused by that failure. The Klinik itself agrees that sanctions are appropriate as a result of Gawinski, Marquardt, and Heimfarth's non-compliance. The Klinik has also had more than adequate opportunity to litigate its objections to the March Order and the reasons therefor. The March Order was affirmed and Gawinski, Marquardt, and Heimfarth's subsequent non-compliance with that Order was willful. It is more than reasonable for

16

the Klinik to now have to bear Hazelden Betty Ford's expenses associated with that non-compliance. Therefore, the Court finds it appropriate to award Hazelden Betty Ford its reasonable costs and attorney fees associated with this motion for sanctions under Rule 37(b)(2)(C) and for the Klinik to pay those expenses.

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Hazelden Betty Ford's Motion for Sanctions Against Defendant for Failure to Comply with this Court's Order Dated March 29, 2023, ECF No. 220, be **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Court recommends that the Klinik be prohibited from relying on any declarations from Gawinski, Marquardt, and Heimfarth at summary judgment or in support of the Klinik's defenses and be prohibited from eliciting testimony from these individuals at trial.

2. The Court also recommends that, depending on how the case develops at trial, the trial judge in his sound discretion consider the imposition of an adverse inference instruction that the Klinik was ordered to produce Gawinski, Marquardt, and Heimfarth for depositions in Minneapolis, Minnesota; the Klinik failed to comply with that order; and the jurors may, but are not required to, infer that their testimony would have been harmful to the Klinik's defenses.

3. The Court additionally recommends that the Klinik be ordered to pay the reasonable costs and attorney fees incurred by Hazelden Betty Ford in connection with this motion for sanctions and that such amount be determined by the undersigned upon further briefing following a ruling on this Report & Recommendation.

4. The Court further recommends that all other requested relief be denied.

Dated: May  20 , 2024              *s/ Tony N. Leung*
                                   Tony N. Leung
                                   United States Magistrate Judge
                                   District of Minnesota

                                   *Hazelden Betty Ford Foundation et al. v.*
                                   *My Way Betty Ford Klinik GmbH*
                                   Case No. 20-cv-409 (JRT/TNL)

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).